## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ )<br><br>**NAING AUNG,**<br>　　　　　　　**Plaintiff,**<br><br>**v.**<br><br>**MARC PRETTENHOFFER; MICHAEL**<br>**MCLAUGHLIN; STEVEN**<br>**WEATHERHEAD; CENTER FOR**<br>**HEALTH INFORMATION AND**<br>**ANALYSIS; COMMONWEALTH OF**<br>**MASSACHUSETTS; ARCADIA**<br>**HEALTHCARE SOLUTIONS, LCC;**<br>**HANOVER INSURANCE GROUP, INC.,**<br>　　　　　　　**Defendants.**<br>_____ ) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**CIVIL ACTION**<br>**NO.  4:20-cv-40116-TSH** |

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT (Docket Nos. 19, 24, 27, 29, 38, 42) AND MOTION FOR ATTORNEY'S FEES (Docket Nos. 51)

### JUNE 16, 2021

**HILLMAN, D.J.,**

This is a *pro se* employment harassment and discrimination case brought by Naing Aung ("Plaintiff") against various Defendants, including Plaintiff's former employers the Center for Health Information and Analysis ("CHIA"); Hanover Insurance Group, Inc. ("Hanover"); Arcadia Healthcare Solutions, LLC ("Arcadia"); and Plaintiff's former coworkers or other individuals Michael McLaughlin; Steven Weatherhead; and Marc Prettenhoffer.   Pending before the Court are Defendants' six motions to dismiss Plaintiff's Amended Complaint (Docket No. 7),

as well as a motion for attorneys' fees and a pre-filing injunction against Plaintiff (Docket No. 51).

## Background[1]

In June 2010, Plaintiff was employed by CHIA's Division of Healthcare Finance and Policy, a Massachusetts state agency, as a healthcare reimbursement policy analyst.  (¶ 2).  In November 2010, CHIA contractor Marc Prettenhoffer became Plaintiff's supervisor.  (¶ 3).  In early 2011, Prettenhoffer began visiting Plaintiff's office to discuss personal matters, and the two became friends.  (¶ 4).  In June 2011, Plaintiff asked Prettenhoffer to stop visiting her office to discuss personal matters.  (¶ 4).  Prettenhoffer was upset, but the two continued to see one another outside the office, exchange email using their private email addresses, and discuss personal matters, including whether Prettenhoffer could set Plaintiff up with a friend of his.  (¶ 5).  On July 23, 2011, Prettenhoffer visited Plaintiff's office and asked if she would accompany him on a two-week trip to Ireland at his expense; Plaintiff declined.  (¶ 9).  The next day, Plaintiff emailed Prettenhoffer using her private email address to ask him on a date to dinner and a movie.  (¶ 25).  Prettenhoffer, also using his private email address, responded that it would be inappropriate and that he did not share Plaintiff's feelings.  (¶ 10).  The two remained on friendly terms, and Plaintiff again asked that they not discuss personal matters at work. (¶¶ 11-12).

---

[1] Facts alleged in the Amended Complaint (Docket No. 7) are accepted as true for the purposes of a R. 12(b)(6) motion.  The Amended Complaint lacks key dates and details and citations to federal and state statutes; because it does not plainly state which claims are asserted against which Defendants, and which facts support each claim, the Court has endeavored to construe Plaintiff's meaning as best as it can without unfairly assuming details or facts which have not been provided.

On September 8, 2011, Plaintiff received a letter suspending her for one day without pay from CHIA employee David Wessman which she states contained unspecified "diminishing and fraudulent and made-up allegations." (¶ 13).  Plaintiff told Wessman that the allegations in the letter were not true, but she served the suspension.  (*Id.*).  She confronted Prettenhoffer about her suspension, and Prettenhoffer apologized and told her that "he had to do what Wessman wanted him to do," indicating that he had played some part in the affair.  (¶¶ 14-15).  The contents of the suspension letter were not provided in the Amended Complaint.

In November 2011, Prettenhoffer took a two-week out-of-state trip (presumably to Ireland) with a "very young girl" and had sexual intercourse with her.  (¶ 16).  Prettenhoffer then moved his office next to Plaintiff's office and attempted to reconcile with her.  (¶ 17).  At Prettenhoffer's request, Plaintiff later agreed to move her office away from his office because their mutual coworker had asked why Prettenhoffer and Plaintiff were sitting close to one another, implying they had an inappropriate relationship.  (¶¶ 18-21).

In early 2012, Wessman alleged that Plaintiff had been harassing Prettenhoffer via unwanted emails and informed Plaintiff that there would be an investigation through the union's collective grievance process; Plaintiff felt betrayed by Prettenhoffer.  (¶ 22).  Nonetheless, Plaintiff, concerned that Prettenhoffer would lose his job because another woman had filed a case or made a sexual harassment complaint against Prettenhoffer in the past, asked Wessman not to report Prettenhoffer and did not tell Wessman about Prettenhoffer's conduct, which she believed to be inappropriate.  (¶ *Id.*).  Plaintiff's union represented her throughout the investigation, during which she answered questions and presented her emails with Prettenhoffer; at the conclusion of the investigation, the agency decided to decline her request to transfer to a different team and terminate Prettenhoffer by the end of 2012.  (¶¶ 23-25).

Plaintiff alleges that her supervisors Kathy Hines and Betty Herney retaliated against her for the investigation by asking her to work weekends and docking her pay if she was so much as five minutes late.  (¶ 26).  She continued to work for the healthcare team under Wessman, who told other managers within the agency not to accept her requests to transfer teams until the healthcare group's major project was complete.  (¶ 29).  Eventually, Plaintiff was transferred from the healthcare team to the finance team, a less desirable assignment outside her scope of experience, and was told that she could not apply for another job in CHIA's healthcare division.  (*Id.*).

At the beginning of 2013, Plaintiff contacted Prettenhoffer because she had heard he was spreading rumors about her.  (¶ 30).  Prettenhoffer forwarded her email to the head of the finance team, who put her on administrative leave, presumably because she was under an order not to contact Prettenhoffer after the investigation.  (¶ 31).  A month later, CHIA held a show cause hearing where a CHIA Human Resources employee and Prettenhoffer offered testimony against her; per Plaintiff, the hearing's outcome was predetermined by management and the process was inherently unfair.  (¶ 32).  Plaintiff was fired from CHIA following the hearing.  (¶ 33).

After leaving CHIA, Plaintiff was unemployed for six months.  (¶ 33).  One unnamed prospective employer told her that she lacked the skill set for the open position; Plaintiff and later discovered that Prettenhoffer worked for the same employer and surmises that Prettenhoffer used his influence to prevent her from getting the job.  (¶ 33).  Eventually, Plaintiff found private sector employment as a clinical analyst, but alleges that her new manager began to "look down on her" after CHIA and Prettenhoffer spoke with him about Plaintiff at a business meeting on another matter.  (¶ 39).  She lost this job because her new employer was acquired by another company and there were mass layoffs.  (¶ 53).

Plaintiff was hired by Arcadia in 2017.  On May 12, 2017, Plaintiff's supervisor Phillip Feeney sent her an email informing her that "it was inappropriate to ask work related questions." Plaintiff was disturbed because Feeney appeared to indicate that he had read a filing from her 2014 federal court case when he told her "you have to stop running," a phrase she had used in unidentified court documents.  (¶ 55).   Plaintiff construed this comment as an attempt to intimidate her.  (*Id*.).  The next week, the same supervisor requested a meeting with her; she declined the meeting, and Human Resources called to inform her she was being fired because of interactions with her manager and taking unapproved absences from work without leave, and that she was not to harass, intimidate, or contact any of Arcadia's employees moving forward.  (¶¶ 55-56).  Both CHIA and Arcadia informed her that they would not rehire her in the future.  (¶ 68).

Plaintiff was hired by Hanover in August 2018.  (¶ 58).  Plaintiff informed her managers that she was in a lawsuit against CHIA and Prettenhoffer and others, and Hanover's Human Resources staff replied that she did not need to notify her Hanover since the suit had nothing to with her employer.  (¶ 59).  The Human Resources email also recommended that Plaintiff seek help for depression and personal issues.  (¶ 60).  Plaintiff was terminated from Hanover on September 29, 2020, after training her replacement, a younger man.  (¶ 61).  Plaintiff claims that the lack of notice before her termination violated the terms of a "conversation" she had had with her manager, Nick Ouellette, where she had asked him to give her a months' notice if she were ever to be replaced or terminated, but his response was not provided.  (¶ 61).  She learned that she was being terminated due to a COVID-19 company-wide staffing reduction, but her separation paperwork stated that the cause was due to lack of competency.  (¶ *Id.*).  Plaintiff asked Hanover to change her separation paperwork in light of the fact that her two years of

employment showed that she was not incompetent at her job, but Hanover refused and told she would have to "report to Federal" to have the separation paperwork changed. (*Id*.). It is unclear what "report to Federal" means. Plaintiff believes that her termination was unfair because she had "put in extra hours" on top of her own responsibilities when one of her colleagues left Hanover, and therefore did not deserve to be fired. (*Id*.). Plaintiff has not alleged that her termination violated any employment contract, or that she was not an at-will employee of Hanover.

Plaintiff recounted that a man verbally assaulted her outside a Shrewsbury restaurant in February 2018 and that a police officer may have left a note insulting her on her windshield after she filed a report about the incident, though she does not connect either event to any Defendant. (¶¶ 63-64). She further alleges that she has been stopped by the police many times since 2018 and connects this development to a statement that Prettenhoffer made during her CHIA show cause termination hearing in 2013: that he had reported her to one of his friends, who was a police officer. (¶ 67). She concludes that her life is in danger. (*Id*.).

**Procedural History**

Plaintiff was referred to the Massachusetts Department of Labor Relations, which opened a case against Prettenhoffer and CHIA on her behalf—the substance of the allegations in the administrative complaint is unclear, though it seems likely they sounded in retaliation and wrongful termination from CHIA. (¶ 35). At some point in 2013, there appears to have been an administrative hearing (the outcome of which was unclear) where Plaintiff was advised to file the case with the Massachusetts Commission Against Discrimination ("MCAD"). (¶ 26).

Plaintiff filed a complaint with MCAD, which held a hearing where Steven Weatherhead, CHIA's attorney, informed MCAD that Prettenhoffer had filed sexual harassment charges against her.[2]  Plaintiff alleges that CHIA, through Weatherhead and its Human Resources Director, perjured itself during the MCAD hearings when it offered testimony that she had been advised about CHIA's sexual harassment policy and that she was informed of Prettenhoffer's sexual harassment complaint against her when she was employed by CHIA.  (¶ 36).  Per Plaintiff, Prettenhoffer had attended the 2013 CHIA show cause hearing leading to her termination and offered hours of testimony, but he did not participate in the MCAD proceedings.  (*Compare* ¶ 32 *with* ¶ 36).

MCAD dismissed the case and denied Plaintiff's subsequent appeal.  (¶ 37).  Plaintiff contacted the U.S. Equal Employment Opportunity Commission ("EEOC") at some point in 2014; the EEOC agreed with MCAD's finding, declined to take further action, and advised Plaintiff that she could file her case in federal court.  (¶ 37).   When Plaintiff visited the Boston EEOC Office, she discovered a document from Weatherhead with false statements about her conduct and that there were no documents from MCAD that she had submitted on her own behalf during that investigation.  (¶ 42).  Also at some point in 2014, there was an arbitration between Plaintiff's union, CHIA, and Plaintiff, and Plaintiff's termination was changed to resignation.  (¶ 40).  On December 12, 2014, Plaintiff filed suit in federal court against CHIA, Prettenhoffer, MCAD, and four of her CHIA supervisors who were not sued in this second case, which I have styled as the 2020 Action.  (*See infra*, Procedural History).

---

[2] It is unclear where these charges were filed, or what the specific allegations were.  However, the most reasonable reading is that Prettenhoffer complained to his supervisor at CHIA because CHIA ultimately terminated Plaintiff.

Plaintiff litigated her claims in federal court against Steven Weatherhead, Marc Prettenhoffer, and CHIA before Judge Saris from 2014-2020 ("the 2014 Action").[3] *See Aung v. Center for Health Information and Analysis*, Case No. 14-cv-14402-PBS.  As in the 2020 Action, Plaintiff filed the 2014 Action *pro se* and failed to comply with multiple Federal Rules of Civil Procedure.  Judge Saris denied Plaintiff's multiple requests for the appointment of *pro bono* counsel, finding that there were no exceptional circumstances that warranted such an appointment.[4]  (July 25, 2015 Order, Docket No. 11, Case No. 14-cv-14402).  Judge Saris allowed the claims against CHIA to proceed.  (*Id.*).  She dismissed all claims against the individual defendants (including Weatherhead and Prettenhoffer) for failure to state a viable claim, though she generously provided Plaintiff 21 days to file a motion for reconsideration of the dismissal showing good cause for allowing the claims to proceed, based upon "legal authority" and providing a "factual basis."  (*Id.*).  The case was stayed for eight months while the First Circuit resolved Plaintiff's appeal of the district court's decision not to appoint *pro bono* counsel for Plaintiff.  (Docket Nos. 30, 32).

On March 8, 2015, Judge Saris considered Plaintiff's multiple filings pursuant to her order to show cause.  (Docket No. 34).  The Judge dismissed Steven Weatherhead from the case because Plaintiff had not filed a motion for reconsideration of his prior dismissal.  (*Id.* at 6).  Plaintiff's Complaint against MCAD for money damages was dismissed on Eleventh Amendment grounds, as the district court found no evidence that the Commonwealth of

---

[3] The named defendants in the 2014 case were Steven Weatherhead, Marc Prettenhoffer, David Wessman, Betty Harney, Kathy Hines, Tonya Bourassa, Jen Gorke, CHIA, and MCAD. Wessman, Harney, Hines, Bourassa, and Gorke are not defendants in this case ("the 2020 Action").

[4] The First Circuit denied Plaintiff's appeal of the denial of pro bono counsel for lack of diligent prosecution.  Case No. 15-2051 (Jan. 4, 2021).

Massachusetts had waived its sovereign immunity as to Plaintiff's claims against it. (*Id.* at 5-6; *see Alabama v. Pugh*, 438 U.S. 871, 781 (1978) (*per curiam*)). The district court granted the motion for reconsideration as to Prettenhoffer and the other individual defendants on the basis that although Plaintiff could not bring individual claims against them for employment discrimination based on sex under 42 U.S.C. § 2000 et seq., Plaintiff may have stated a state claim against them under Massachusetts' analogous employment discrimination statute, M.G.L. 151B, § 4(4). (*Id.* at 4-5).[5]

Prettenhoffer and CHIA's motions to dismiss were granted on December 22, 2016. (See Docket Nos. 63, 69, 83, 86). As to CHIA, Judge Saris adopted Magistrate Judge Kelley's findings that Plaintiff's state 151B claims were barred by the Eleventh Amendment because CHIA is an agency of the Commonwealth of Massachusetts, and that Plaintiff's federal Title VII claims must be dismissed because Plaintiff had failed to allege that she engaged in any conduct that was protected under the statute (Docket No. 70 at 5-6).[6] As to Prettenhoffer, Judge Saris

---

[5] Generally, a plaintiff bringing a 151B claim must first exhaust her administrative remedies through MCAD by naming the defendant as a respondent before MCAD. *Butner v. Department of State Police*, 60 Mass. App. Ct. 461, 468 (2004). However, Judge Saris noted that Massachusetts law allows a plaintiff to bring a 151B claim against a defendant who was not named as a respondent in the MCAD complaint if the individual was sufficiently identified in the MCAD charge, was put on notice, and had an opportunity to conciliate. *See Chapin v. University of Massachusetts Lowell*, 977 F. Supp. 72, 76 (D. Mass. 1997) (". . . Chapter 151B claims against a defendant not named in the MCAD charge will be sustained if the complaint alleges that 1) the individual had notice of the charge against it and 2) an opportunity to conciliate before the MCAD, even if his conduct fell within the scope of the MCAD investigation." *Caulfield v. Human Res. Div. of Commonwealth of Massachusetts*, Case No. 15-cv-10091-PBS, 2015 WL 5190716 at *4 (D. Mass. Sept. 54, 2015)). Reviewing Plaintiff's response to her show cause order, Judge Saris determined that it remained unclear whether Plaintiff had exhausted her required state remedies because Plaintiff had not provided her MCAD complaint, and her federal court complaint did not make clear whether the individual defendants were on notice in MCAD that they might later be sued civilly. (Docket No. 34 at 5).
[6] To make a prima facie claim for employment retaliation under Title VII, a plaintiff must demonstrate that she either "(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an

adopted Magistrate Judge Kelly's findings over Plaintiff's objections that: 1) the anti-SLAPP statute did not apply; 2) Title VII only allows employment discrimination claims against employers, not individuals; and 3) that Plaintiff had failed to exhaust her administrative remedies before filing a civil claim against Prettenhoffer because she had not demonstrated that he had the requisite notice of the claim or opportunity to conciliate.  (Judge Kelley Report & Recommendation, Docket No. 71 at 8-10).  Judge Saris denied Prettenhoffer's motion for sanctions and attorney's fees in consideration of Plaintiff's *pro se* status, and that malicious comments she had made regarding Prettenhoffer's sexual identity were largely limited to the objections to the Reports and Recommendations.[7]  (Docket Nos. 81, 84).  Nonetheless, Judge Saris warned that the Court would impose sanctions if Plaintiff made any additional frivolous filings. (Docket No. 84).

Having dismissed the remaining defendants in separate orders, Judge Saris closed the 2014 Action in December 2016, but Plaintiff spent the next three years submitting frivolous filings.  (Docket Nos. 81, 89).  Plaintiff filed motions to reopen her case and/or receive attorney's fees on September 29, 2017; September 20, 2019; and September 10, 2020 (Docket Nos. 90-91, 102; 112); for leave to file electronically, although the case was still closed (Docket No. 99); for a hearing, although the case was still closed (Docket Nos. 103, 114); to seal documents/the case (Docket No. 104, 111); and to receive legal aid (Docket No. 107).  On September 10, 2020, she filed a missive that attacked the dismissed defendants and did not address the court.  (Docket No. 115).  On September 15, 2020, Judge Saris denied all the pending motions and issued a second

---

investigation, proceeding, or hearing under Title VII." *Fantini v. Salem State College*, 557 F.3d 22, 32 (1st Cir. 2009).

[7] I have reviewed Plaintiff's inappropriate insinuations concerning Prettenhoffer's sexual orientation that are summarized in his 2014 motion for sanctions at Docket No. 81 because they bear on his motion for attorney's fees in the 2020 Action, but I will not repeat them here.

warning that Plaintiff "could be subject to sanctions, including monetary sanctions, should she continue to file pleadings in this case." (Docket No. 116).

On April 20, 2018, Plaintiff filed a defamation case against Prettenhoffer in Suffolk County Superior Court concerning "Aung's strongly held view that the allegations Prettenhoffer made about her to CHIA, MCAD, and in the Federal Case [the 2014 Action] were false when made and that her employment has suffered as a result of those allegations." Order on Motion to Dismiss, *Naing N. Aung v. Marc Prettenhoffer*, 1884-cv-1235 (November 14, 2018) (Squires-Lee, J.) (available at Docket No. 44-1 in 2020 Action). Citing claim preclusion, the Superior Court dismissed the case as barred by the 2014 Action before Judge Saris. (*Id.* at 7-8). The Massachusetts Court of Appeals affirmed and denied Prettenhoffer's request for attorney's fees for having to defend a frivolous appeal. *Aung v. Prettenhoffer*, 2020 WL 3124672 (Mass. App. Ct. 2020).

Plaintiff filed the 2020 Action on September 10, 2020, while she had outstanding motions before Judge Saris in the 2014 Action to reopen what is essentially the same case. The 2020 Amended Complaint seeks to relitigate the claims that were dismissed in the 2014 Action against CHIA, Weatherhead, Prettenhoffer, and MCAD, though Defendants McLaughlin, Arcadia, and Hanover were not named in her prior suit.

## Legal Standard

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept all factual allegations in the

complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In opposing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). If the defendant mounts a "sufficiency challenge," the court will assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Nonetheless, a plaintiff cannot assert a proper jurisdictional basis "merely on unsupported conclusions or interpretations of law." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (internal citations and quotations omitted). If, however, the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations by both parties and resolve the factual disputes. *Valentin* at 363. The court has "broad authority" in conducting the inquiry

and can, in its discretion, consider extrinsic evidence in determining its own jurisdiction.  *Id.* at 363-64.

**Discussion**

I.   *CHIA and the Commonwealth's Motion to Dismiss (Docket No. 19)*

CHIA, on behalf of itself and the Commonwealth of Massachusetts, filed a multi-pronged motion to dismiss for failure to state a claim, claim preclusion, sovereign immunity, and violation of the applicable statutes of limitation.  Judge Saris previously dismissed Plaintiff's 151B claims against CHIA for failure to allege that Plaintiff was retaliated against for any protected activity contained in the statute, and Plaintiff's Title VII claims under the doctrine of sovereign immunity due to CHIA's status as a state agency.

I find that Plaintiff's claims against CHIA are barred by the doctrine of claim preclusion, which applies if "(1) the earlier suit resulted in a final judgment on the merits; (2) the causes of action asserted in the earlier suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related."  (*Airframe Systems, Inc. v. Raytheon, Co.*, 601 F.3d 9, 14 (1st Cir. 2010).  Judge Saris' dismissal of CHIA in the 2014 Action for Plaintiff's failure to state a claim was plainly a final judgment on the merits.  *See AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005).  In the 2014 Action, Plaintiff litigated identical claims against CHIA as she raises here, alleging that CHIA treated her unfairly and retaliated against her after she was sexually harassed by Prettenhoffer: in fact, the 2014 Amended Complaint contained substantially more detail about her dealings with Prettenhofer and her termination from CHIA then what she provided in this case, including the grounds CHIA provided for her suspension.  (*See generally*, Case No. 14-cv-14402-PBS, Docket No. 5).  CHIA was a defendant

in both suits, although the Commonwealth was only named as a defendant in the 2020 Action. However, because there are no allegations that could be attributed to the Commonwealth other than the allegations against CHIA, and CHIA is a state agency, I find that parties are sufficiently identical and Plaintiff's claims against both CHIA and the Commonwealth are barred by claim preclusion.

The crux of Plaintiff's argument against claim preclusion is that "the decision from the 2014 federal court case should not be included" because it "was made based on wrongful facts which were submitted from defendants and based on not complete facts."  (Docket No. 32 at 4, 5).  The order to dismiss CHIA from the 2014 case was based on an analysis of the weight of the facts that *Plaintiff* provided in her Amended Complaint, not whatever facts about Plaintiff's termination from CHIA that Defendants supplied.  It is Plaintiff's duty to supply the court with the relevant and necessary facts to weigh her claim, so any objection that the dismissal order "was made without knowing the whole facts" is no reason not to apply issue preclusion.  (*Id*. at 5.).  Nor is it the Court's role to "verify" what other investigatory agencies, courts, or parties in this case have admitted and found in prior cases or to ask the Plaintiff to supply additional facts so that she may sufficiently state a claim.  (*See id*. at 5, 13).

Because I find that Plaintiff's claims against CHIA (and therefore the Commonwealth, against whom no separate claims are stated apart from those claims against CHIA) are precluded, I need not reach the Plaintiff's remaining grounds for dismissal.  CHIA and the Commonwealth's motion to dismiss (Docket No. 19) is granted, with prejudice.

II.  *Michael McLaughlin Motion to Dismiss (Docket No. 24)*

Michael McLaughlin was not named as a defendant in the 2014 Action.  His name appears twice in the 2020 Action Amended Complaint: once on the list of defendants, and once stating that he informed Judge Saris that his client, Prettenhoffer, had made sexual harassment claims against Plaintiff when they were both working at CHIA.  (Docket No. 7 at 1, ¶ 44).  In his motion to dismiss, Attorney McLaughlin explains that he represented Prettenhoffer in the 2014 Action and in the 2018 defamation case Plaintiff brought in Suffolk County Superior Court and avers that he has no other connection to Plaintiff.  (Docket No. 25 at 2).  Moreover, he states— and the docket corroborates— that he was never served in this case.

Plaintiff's two oppositions to the motion to dismiss (Docket Nos. 33, 34) do not provide any reason to believe that Attorney McLaughlin was served with process as required by Fed. R. Civ. P. 4(m).  Such a fact alone requires his dismissal.  Furthermore, Plaintiff's objections that Attorney McLaughlin misrepresented the nature of Plaintiff's and Prettenhoffer's relationship and communications in the 2014 Action and before the Suffolk County Superior Court are futile because "[t]he litigation privilege protects an attorney's statements made while 'engaged in his function as an attorney,' both prior to and during litigation." *Mack v. Wells Fargo Bank, N.A.*, 88 Mass. App. Ct. 664, 667 (2015).  That privilege extends to protection from civil liability.  *Doe v. Nutter, McClennen & Fish*, 41 Mass.App.Ct. 137, 140-41 (1996).

Attorney McLaughlin's motion to dismiss (Docket No. 24) is granted, with prejudice. Attorney McLaughlin's request to sanction Plaintiff commensurate with the extent of her behavior over the past ten years is denied, as this is her first action against Attorney McLaughlin personally and the Court is denying it with prejudice to prevent a reprisal.  The Court will address Prettenhoffer's motion for attorney's fees and a pre-filing injunction separately.

III.     *Hanover Motion to Dismiss (Docket No. 27)*

Plaintiff did not oppose Hanover's motion to dismiss the Amended Complaint.

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first.... It is not simply formalistic to decide the jurisdictional issue when the case would be dismissed in any event for failure to state a claim.  Different consequences flow from dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not being on the merits, is without res judicata effect." *Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.,* 62 F.3d 37, 39 (1st Cir.1995).   Accordingly, the Court turns first to Hanover's 12(b)(1) motion to dismiss.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  "In 28 U.S.C. § 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that aris[e] under federal law, § 1331, and cases in which the amount in controversy exceeds $ 75,000 and there is diversity of citizenship among the parties, §1332." *Home Depot U.S.A., Inc. v. Jackson*, 139 S.Ct. 1743, 1746 (2019).  "Federal-question jurisdiction affords parties a federal forum in which 'to vindicate federal rights,' whereas diversity jurisdiction provides 'a neutral forum' for parties from different states." *Id*. (citing *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 552 (2005).

This case does not arise under the Court's diversity jurisdiction or federal-question jurisdiction.  Plaintiff and Hanover are both citizens of Massachusetts, so there is no complete diversity of citizenship required to assert diversity jurisdiction.  There is no federal question jurisdiction because Plaintiff has not stated a claim against Hanover under any federal statute.

The crux of her allegations against Hanover are that Hanover told her that she was being laid off due to company-wide COVID-19 staffing reductions, but wrote that she was being terminated because of lack of competency on her separation paperwork.  This alleged bait and switch, if it occurred in the manner that Plaintiff described, does not state a federal claim for employment discrimination under Title VII for employment discrimination.  (It is unclear if it even constitutes a state breach of contract claim, as Plaintiff appears to have been an at-will employee, and although she indicated that she asked her manager to give her a month's notice before any change in her employment, her manager never responded).  Plaintiff also alleged that she was directed to train her replacement, a younger male employee, but does not state a claim under the Age Discrimination in Employment Act for age-based employment discrimination or Title VII for sex-based employment discrimination because she appears to accept that she was terminated as part of a company-wide COVID-19 staffing reduction, not due to any protected personal trait, such as her age[8] or sex. *See Woodman v. Haemonetics Corp.*, 31 F.3d 1087, 1091 (1st Cir. 1995).

Hanover's 12(b)(1) motion to dismiss for lack of jurisdiction (Docket No. 27) is granted. As the Court lacks jurisdiction to hear the case, there is no need to reach Hanover's 12(b)(6) motion to dismiss.

IV.    *Arcadia Motion to Dismiss (Docket No. 29)*

Plaintiff alleges that Arcadia, her employer from March 2017-May 2017, learned about her lawsuit against CHIA and Prettenhoffer and retaliated against her by having her dismissed, fabricating unexcused absences from work and inappropriate interactions with her supervisor,

---

[8] Indeed, Plaintiff did not give her age at the time of her termination, so she cannot make out a prima facie case for age discrimination.

Phillip Feeny, as pretext.  As evidence to support her theory, Plaintiff notes that Feeny repeated a phrase "you have to stop running" that she had allegedly used in an earlier court filing against CHIA and Prettenhoffer to intimidate her and show that he was aware of her history with Prettenhoffer and CHIA.  She also alleges that her time away from work was excused, and that she did not have any inappropriate interactions with her supervisor.  She does not state which laws would support a cause of action based on the scants facts alleged, but the Court construes that she is attempting to assert employment discrimination claims under Title VII and/or M.G.L. c. 151B.

As Arcadia correctly observes, any federal or state claims Plaintiff may have against it for employment discrimination and/or retaliation are time-barred.  Plaintiff was terminated from Arcadia in May 2017; she added Arcadia as a defendant in this case through her Amended Complaint more than three years after the alleged unlawful conduct, on October 7, 2020.  Therefore, her 151B claim is time barred, even if I accept her representation in the opposition to the motion to dismiss that she filed an MCAD case against Arcadia at some point in 2017.  *See* M.G.L. c. 151B §§ 5, 9.  Additionally, her federal Title VII claim is barred because it appears that she never raised her claim against Arcadia before the EEOC.  The only reference to the EEOC in the Amended Complaint concerns Plaintiff's efforts to raise her claims against CHIA and Prettenhoffer before that commission from 2013-2014, three years before the alleged unlawful conduct at Arcadia. (Amended Complaint ¶¶ 37-38, 42).   Title VII claims must be brought before the EEOC before the aggrieved party can raise them in federal court, and any civil claim in federal court must be filed within ninety days after the EEOC dismisses a case.  42 U.S.C. § 2000e-5(f)(1).

Plaintiff urges the Court to ignore the applicable statutes of limitation because of how difficult Arcadia's conduct has made her life, but she has not provided any substantive legal argument in her own defense.  (Docket No. 35, ¶¶ 26, 30, 35).  Accordingly, Arcadia's 12(b)(6) motion to dismiss for failure to state a claim (Docket No. 29) is granted, with prejudice.


V.   *Steven Weatherhead Motion to Dismiss (Docket No. 38)*

Attorney Steven Weatherhead was dismissed from the 2014 Action after Plaintiff included his name on a list of individual defendants in the Amended Complaint but failed to adduce a single allegation against him in the body of the Amended Complaint.  (Docket No. 11, Case No. 14-14402-PBS).  At the time, he represented David Wessman, a defendant in Plaintiff's prior federal suit.  (*Id.*).  Attorney Weatherhead may have also represented CHIA in the 2013-2014 MCAD proceedings (¶ 36-37, 42).

In the 2020 Action, Plaintiff alleges that Attorney Weatherhead:

- "stated that Prettenhoffer had filed sexual harassment against me.  In their filing to MCAD, they also lied on their own affidavit that I was given a sexual harassment policy." (¶ 36).
- "CHIA's attorney, Weatherhead, stated that I had only checked off "retaliation" and not discrimination [in the MCAD complaint]." (¶ 37).
- "I went to Boston MA EEOC office . . . saw a letter from Weatherhead to EEOC director in my file badmouthing about me with lies."  (¶ 42).

Even assuming that these claims are not barred by the litigation privilege which attaches to lawyers in civil cases, they are barred by claim preclusion arising from the 2014 Action before Judge Saris.  Plaintiff was aware of Attorney Weatherhead's statements in the MCAD proceedings and the letter in her EEOC file well before she filed the 2014 Action.  (¶ 42). Therefore, she had a prior opportunity to litigate these claims against Attorney Weatherhead in her prior federal case and did not do so.  She also could have pressed her claims against Attorney

Weatherhead in her 2018 Suffolk County defamation case, which arose from the same nucleus of facts.  It is too late now.

Attorney Weatherhead makes additional cogent arguments in favor of his dismissal, including the incoherent nature of the Amended Complaint, Plaintiff's failure to state a claim under federal law against him which would establish this Court's federal question or diversity jurisdiction (Weatherhead and Plaintiff are both citizens of Massachusetts), and Plaintiff's improper service of process.

Attorney Weatherhead's motion to dismiss (Docket No. 38) is granted, with prejudice.


VI.    *Marc Prettenhoffer Motion to Dismiss (Docket No. 42)*

As has been discussed *ad nauseum* in the litigation history of this case and the individual analyses of CHIA, Attorney McLaughlin, and Attorney Weatherhead's motions to dismiss, Plaintiff has fully litigated her retaliation and defamation claims against Prettenhoffer in the 2018 Suffolk Superior Court case and the 2014 Action before Judge Saris in the U.S. District Court in Boston. The Superior Court dismissed the case with prejudice and ordered the Plaintiff to submit a copy of the dismissal order with her complaint if she should seek to file any future claims against Prettenhoffer in any court in the Commonwealth relating to her former employment at CHIA.

Plaintiff's claims against Prettenhoffer are also barred by res judicata arising from the 2014 Action.  As discussed *supra*, claim preclusion applies if "(1) the earlier suit resulted in a final judgment on the merits; (2) the causes of action asserted in the earlier suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." (*Airframe Systems, Inc. v. Raytheon, Co.*, 601 F.3d 9, 14 (1st Cir. 2010).   Here, the

prior suit resulted in a dismissal for failure to state a claim, which qualifies as a final judgment on the merits.  The parties in the two suits seeking to invoke the doctrine—Marc Prettenhoffer—are identical.   Furthermore, the two suits are sufficiently identical or closely related.  Plaintiff's Amended Complaint does not allege any misconduct by Prettenhoffer which post-dates her 2014 Complaint that she could not have raised before Judge Saris.  Plaintiff alleged that Prettenhoffer showed up "at her workplace" when she was employed by Hanover from 2016 to 2018, but such a fact, on its own, does not support a new cause of action.  (¶ 58).  Plaintiff's reports that the police routinely follow her and a stranger harassed her outside a restaurant in 2018 also have no substantial link to Prettenhoffer.  (¶¶ 63, 64, 67).

Plaintiff's claims against Prettenhoffer are also barred under *Rooker-Feldman* to the extent that they overlap with her claims in this case.  Under that doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 465 (2006).

Prettenhoffer's motion to dismiss (Docket No. 48) is granted with prejudice.

VII.   Motion for Attorneys' Fees and for a Pre-Filing Injunction (Docket No. 51)

"While *pro se* pleadings are viewed less stringently, a petitioner who elects to proceed pro se must comply with the applicable procedural and substantive rules of law." *Lefebvre v. Comm'r*, 830 F.2d 417, 419 (1st Cir. 1987).  Under Fed. R. Civ. P. 11, this Court may impose monetary sanctions if a *pro se* party submits a pleading for an improper purpose, or which contains frivolous or malicious claims.  *See* R. 11(b)(1)(2); *Eagle Eye Fishing Corp. v. Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994).  In addition to R. 11, "[a] district court has the power to enjoin a party from filing frivolous and vexatious lawsuits." *Azubuko v. MBNA*

21

*America Bank*, 396 F.Supp.2d 1,7 (D. Mass. 2005).  Also, "it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall v. Cole*, 412 U.S. 1, 7 (1973).

Prettenhoffer seeks attorney's fees and a pre-filing injunction for what he characterizes as Plaintiff's "vicious and vexatious campaign" to "weaponize" the justice system against him. (Docket No. 51 at ¶ 2).  Indeed, Plaintiff has repeatedly refiled the same harassment and workplace retaliation claims against Prettenhoffer over the past ten years across a variety of state and federal judicial and administrative fora, including twice before this Court, and once before the Suffolk County Superior Court and the Massachusetts Appeals Court.  On September 10, 2020, Plaintiff simultaneously filed a motion to reopen the 2014 Action and the 2020 Action, a second case with a number of identical claims.

Plaintiff's abusive behavior has not ceased, forcing Prettenhoffer and state and federal courts to continue to waste time and money responding to her frivolous motions.  Prettenhoffer notified the Court that as recently as April 28, 2021, Plaintiff filed a motion for an emergency hearing in her still-closed Suffolk County Superior Court defamation case before Judge Squires-Lee.  (Docket No. 52-1).  Plaintiff's opposition to Prettenhoffer's motion to sanctions does not address whether her repetitive filings across various fora against Prettenhoffer, CHIA, or related Defendants have been procedurally permissible. (Docket No. 56).

This sustained refusal to engage on the issue of res judicata or acknowledge in any practical way that her access to the Courts is not limitless warrants establishing two procedural mechanisms to deter future frivolous filings.  First, I have dismissed the claims against Prettenhoffer and several other Defendants with prejudice.  *See Azubuko v. MBNA Am. Bank*, 396 F. Supp. 2d 1, 9-10 (D. Mass. 2005) (dismissing plaintiff's complaint with prejudice as a

proper sanction for circumventing court orders and continuously filing vexatious lawsuits). Second, I am imposing the following protective order: in any future action brought in the United States District Court for the District of Massachusetts by Plaintiff against Marc Prettenhoffer, CHIA, Steven Weatherhead, MCAD, or the Commonwealth of Massachusetts, or in any future action brought in this district arising from the claims that Plaintiff asserted concerning her termination from CHIA and any related damages, Plaintiff shall file a copy of this Order with the complaint in the new action, and no defendant need respond unless ordered to respond by the Court in that case.

I decline to award attorney's fees under R. 11 at this time because I find that dismissal with prejudice and the protective order should prevent future frivolous filings against Prettenhoffer.  Furthermore, the factors enumerated by the Advisory Committee for disciplinary action do not favor awarding attorney's fees.

The Advisory Committee proposed that courts weighing Rule 11 motions consider: (1) whether the conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) wither it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; (4) whether it was intended to injure; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (8) what amount is needed to deter similar activity by other litigants." Notes, R. 11.   Plaintiff has an unsophisticated understanding of the law and the relationship between the federal and state courts; that she provided the docket number for the 2014 Action in the 2020 Action's Amended Complaint shows that she did not intend to deceive the Court by hiding her prior suit and

indicates that she likely did not understand that a dismissal from Judge Saris meant that she could not refile the same case again in federal court.  Moreover, Plaintiff stopped making filings in the 2014 Action after Judge Saris issued an order making clear that the case was closed, and that Plaintiff could be subject to sanctions, including monetary sanctions, if she continued to make filings in that case, which shows she is willing to comply with Court orders.  Furthermore, Prettenhoffer did not file extensive pleadings or conduct any discovery in this case; much of his short motion to dismiss (Docket No. 43) was patterned on Weatherhead's motion to dismiss (Docket No. 39), suggesting that there was minimal time and expense involved in Prettenhoffer's defense of this lawsuit.

VIII.   Sanctions

This Court is generally reluctant to sanction *pro se* plaintiffs pursuant to its inherent authority to manage the cases and parties who appear before it.  Excessive or unfair sanctions limit access to the justice system and risk discouraging individuals who cannot afford counsel from filing meritorious claims.  However, Plaintiff's egregious and excessive filing in this case has consumed a good deal of the Court's and the Plaintiff's limited resources, and the Court is concerned that Plaintiff will continue her improper conduct without some further modest measure of deterrence.   Therefore, Plaintiff is ordered to show cause within twenty-one (21) days of this order why she should not be fined $300 for her conduct in this case.  Plaintiff is instructed to e-file her written objections to the Court's proposed $300 fine on the docket of this case in the same manner that she has filed her prior pleadings.  Such objections shall not exceed eight (8) pages.  I will consider Plaintiff's submission carefully before deciding on any financial penalty.

IX.    <u>Miscellaneous Motions</u>

The following outstanding motions are denied as untimely or seeking improper relief: Motion for Hearing (Docket No. 10); Motion to Have Defendant Pay for Health Insurance and Hospital Bills (Docket No. 54); Motion to Order Subpoena to Verify True Facts (Docket No. 61); and First Motion to Seal Document (Docket No. 62).


## <u>Conclusion</u>

For the reasons set forth above, CHIA and the Commonwealth's motion to dismiss (Docket No. 19) is ***<u>granted, with prejudice</u>***; Michael McLaughlin's motion to dismiss (Docket No. 24) is ***<u>granted, with prejudice</u>***; Hanover's motion to dismiss (Docket No. 27) ***<u>is granted</u>***; Arcadia's motion to dismiss (Docket No. 29) is ***<u>granted, with prejudice</u>***; Steven Weatherhead's motion to dismiss (Docket No. 38) ***<u>is granted, with prejudice</u>***; and Marc Prettenhoffer's motion to dismiss (Docket No. 42) is ***<u>granted, with prejudice</u>***. Prettenhoffer's Motion for Attorney's Fees and a Pre-Filing Injunction (Docket No. 51) is ***<u>granted in part and denied in part</u>***.

***<u>Injunctive Relief:</u>*** The Court orders that in any future action brought in the United States District Court for the District of Massachusetts by Plaintiff against Marc Prettenhoffer, CHIA, Steven Weatherhead, MCAD, or the Commonwealth of Massachusetts, or in any future action brought in this District arising from the claims that Plaintiff asserted in this case concerning her termination from CHIA and any related damages, Plaintiff shall file a copy of this Order with the complaint in the new action, and no defendant need respond unless ordered to respond by the court in which the new action is filed.

> **_Order to Show Cause_**: Pursuant to the instructions in Part VIII of this Order, Plaintiff is ordered to show cause within twenty-one (21) days of this order why she should not be fined $300 for her conduct in this case.

> Plaintiff's remaining outstanding motions at Docket Nos. 10, 54, 61, and 62 are **_denied_**.

**SO ORDERED.**

**_/s/ Timothy S. Hillman_**
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
